UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN BURDICK,

                Plaintiff,

    v.                                                          1:06-CV-1465 (LEK/RFT)

WILLIE JOHNSON, JR., JON DOYLE,
TROOPER GUANEY, and TROOPER
KANEG,

                Defendants.

## MEMORANDUM-DECISION AND ORDER

Plaintiff *pro se* John Burdick ("Plaintiff" or "Burdick") commenced the instant action against Defendants Trooper Willie J. Johnson, Trooper Guaney, Trooper Kaneg and Sergeant James Doyle[1] (collectively "Defendants") pursuant to 42 U.S.C. § 1983. Complaint (Dkt. No. 1). Presently before the Court is Defendants' unopposed Motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Motion (Dkt. No. 35).

### I.    BACKGROUND

The undisputed facts are as follows.[2] On December 2, 2003, at approximately 3:10 p.m.,

---

[1] Incorrectly named in the caption as "John Doyle." See generally Complaint.

[2] Defendants submitted a properly supported statement of material facts pursuant to Local Rule 7.1(a)(3). See Statement of Material Facts (Dkt. No. 35, Ex. 5); see also N.D.N.Y. L.R. 7.1(a)(3). The facts are deemed to be true because Plaintiff failed to submit a responsive statement of material facts. N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert"). In accordance with Local Rule 56.2, Defendants adequately forewarned the *pro se* Plaintiff that failure to submit a responsive statement would be deemed an admission pursuant to Local Rule 7.1(a)(3). See N.D.N.Y. L.R. 56.2; see also Notice of Motion (Dkt. No. 35, Ex. 1). Accordingly, the facts as asserted by Defendants are accepted as true.

Defendant Trooper Willie J. Johnson ("Defendant Johnson") was dispatched to take a complaint from a woman by the name of Catherine Derusha. Ambrosio Decl., Ex. A at 4 (Dkt. No. 35, Ex. 8). Ms. Derusha complained that her ex-husband, the Plaintiff in this action, was leaving harassing messages on her answer machine. Id. at 4. Ms. Derusha asked Defendant Johnson to advise Plaintiff to stop calling her. Id. Defendant Johnson then drove to Plaintiff's residence. Id. Plaintiff, who appeared highly intoxicated, answered the door. Id. Defendant Johnson informed Plaintiff about Ms. Derusha's complaint and directed Plaintiff to cease all contacts with Ms. Derusha. Id. Plaintiff appeared agitated by Defendant Johnson's statements. Id.

After Defendant Johnson left Plaintiff's residence, Plaintiff called 911. Burdick Dep. at 43, 46-50, 57-64 (Dkt. No. 35, Ex. 3); Munkwitz Decl., Ex. B (Dkt. No. 35, Ex. 4). Plaintiff was audibly extremely upset and ranted to the dispatcher about, amongst other things, being "threatened" by a police officer. Burdick Dep. at 59-60; Munkwitz Decl., Ex. B at 1-3. During the course of this call, Plaintiff stated that "if he comes back, I'm going to shoot the son-of-a-bitch," and "if he comes in my house and says this stuff again to me, I'm going to wipe him out." Munkwitz Decl., Ex. B at 3, 6. Both comments were presumably in reference to Defendant Johnson.

Defendant Sergeant James M. Doyle ("Defendant Doyle") was the supervisor in charge at the State Police Brunswick station on the day of the incident that forms the basis for this action. Doyle Decl.¶ 2 (Dkt. No. 35, Ex. 10). At approximately 4:00 p.m., Defendant Doyle was advised of Plaintiff's 911 call. Id. Defendant Doyle drove to the vicinity of Plaintiff's residence where he was joined by Defendant Trooper Guaney ("Defendant Guaney"), Defendant Trooper Johnson ("Defendant Johnson"), and Defendant Trooper Kaneg ("Defendant Kaneg"). Id. ¶¶ 3-4.

When Defendant Doyle arrived at Plaintiff's residence, the dispatcher, who was still on the

telephone with Plaintiff, directed Plaintiff to exit his residence unarmed. Id. Plaintiff approached Defendant Doyle's patrol car. Id. ¶ 4; Guaney Decl.¶ 3 (Dkt. No. 35, Ex. 11); Kaneg Decl. ¶¶ 3-4 (Dkt. No. 35, Ex. 12). Defendant Doyle visually inspected Plaintiff to determine that he was not armed and then patted Plaintiff down to confirm that he was, in fact, not armed. Doyle Decl. ¶¶ 4-5; Guaney Decl. ¶¶ 3-4; Kaneg Decl. ¶¶ 3-4. Plaintiff did, however, appear to be highly intoxicated. Doyle Decl. ¶¶ 4, 8; Guaney Decl. ¶ 6. Following this inspection, Defendant Doyle directed Defendants Gauney, Johnson and Kaneg to respond to Plaintiff's residence and stand by outside. Doyle Decl. ¶¶ 4-5; Guaney Decl. ¶¶ 3-4; Kaneg Decl. ¶¶ 3-4.

With Plaintiff's consent, Defendant Doyle and, later, Defendant Guaney entered Plaintiff's residence. Doyle Decl. ¶¶ 4-5, 6; Guaney Decl. ¶¶ 5-6. Defendant Doyle explained to Plaintiff that he would be taken to Samaritan Hospital for an evaluation pursuant to section 9.41 of the New York Mental Hygiene Law ("MHL"). Doyle Decl. ¶ 6; Guaney Decl. ¶¶ 5-6. Plaintiff insisted that he would not go to the hospital. Doyle Decl. ¶¶ 4, 8; Guaney Decl. ¶ 6. Defendants Doyle and Guaney approached Plaintiff, who was seated in a chair, and pulled him out of the chair to place him in handcuffs. Doyle Decl. ¶ 8; Guaney Decl. ¶ 7. Notably, Defendants Kaneg and Johnson were not present in Plaintiff's house during this process or at any time on December 2, 2003. Doyle Decl. ¶ 15.

While Defendants were in the process of handcuffing Plaintiff, Plaintiff advised the officers that he had previously broken his arm and asked that they be careful. Doyle Decl. ¶ 8; Guaney Decl. ¶ 7. Defendant Doyle inspected Plaintiff's arm but did not observe a case or visible injury. Doyle Decl. ¶ 8. Plaintiff was placed in handcuffs. Doyle Decl. ¶ 9; Guaney Decl. ¶ 9. Plaintiff made no complaint of pain. Id.

As Plaintiff was being escorted from his residence to the ambulance that was waiting to transport him to Samaritan Hospital, he began laughing and yelling that he was going to sue for false arrest. Doyle Decl. ¶ 10; Kaneg Decl. ¶¶ 6-7; Guaney Decl. ¶¶ 10-11. At no time during this transport did Plaintiff complain to the Emergency Medical Technicians ("EMTs") that he was in pain nor did he seek any medical treatment from them. Doyle Decl. ¶ 12; Kaneg Decl. ¶ 7; Guaney Decl. ¶ 11; Ambrosio Decl., Ex. A (Dkt. No. 35, Ex. 8).

Upon his arrival at Samaritan Hospital, Plaintiff was taken to an examination room in the psychiatric unit. Doyle Decl. ¶ 13; Kaneg Decl. ¶ 9. There Plaintiff's handcuffs were removed and he was physically restrained by the hospital staff to a bed until he was able to see a counselor. Id.; Burdick Dep. at 97-98. While in the presence of the Defendants at Samaritan Hospital, Plaintiff made no complaints about pain in his arm or hand nor did he request any medical attention. Doyle Decl. ¶ 13; Kaneg Decl. ¶ 9.

Plaintiff had, in fact, been diagnosed with a fractured hand on or about November 4, 2003, over one month prior to the events alleged in the Complaint. Munkwitz Decl. ¶ 8; Munkwitz Decl., Ex. C (Dkt. No. 35, Ex. 5). On December 9, 2003, Plaintiff was again treated for an injury to his hand, this time resulting from an alleged assault that had occurred on the previous evening, December 8, 2003, six days after the events alleged in the Complaint. Munkwitz Decl. ¶ 9; Munkwitz Decl., Ex. C.

On December 4, 2006, Plaintiff commenced this action with the assistance of counsel pursuant to 42 U.S.C. § 1983. Complaint (Dkt. No. 1). Plaintiff claims that Defendants falsely arrested him and used excessive force, which resulted in injury to his wrist. On May 1, 2007, Plaintiff's attorney moved to withdraw as counsel. Dkt. No. 10. This Court granted that Motion on

June 7, 2007, and Plaintiff has subsequently proceeded *pro se*. On October 4, 2007, this Court denied Defendants' Motion to Dismiss. Dkt. No. 19.

On February 18, 2009, Defendants filed the Motion for summary judgment presently before this Court. Dkt. No. 35. Plaintiff never filed any response to this Motion.

**II.     DISCUSSION**

**A.     Standard of Review**

A motion for summary judgment is granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. Lipton, 71 F.3d at 469. The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" contained in the pleadings. FED. R.CIV. P. 56(e); accord Sista, 445 F.3d at 169. That is, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. To defeat the motion, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. FED. R. CIV. P. 56(e)(2); see Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922

F.2d 118, 121 (2d Cir. 1990).

### B. Excessive Force

"All claims that law enforcement officers have used excessive force - - deadly or not - - in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). Seizures for mental health evaluations pursuant to New York Mental Hygiene Law § 9.41 are analyzed under the Fourth Amendment. See Kerman v. City of New York, 261 F.3d 229, 240 n. 7 (2d Cir. 2001). "When determining whether police officers have employed excessive force . . . courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation." Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Graham, 490 U.S. at 397). In making a reasonableness determination, a court must consider the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting" the seizure. Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

Plaintiff claims that the Defendants used excessive force in violation of the Fourth Amendment. Compl. ¶¶ 16-19 ("In short, it was not objectively reasonable for the Defendants to twist and severely injure Mr. Burdick's wrist"). Defendants correctly argue that no excessive force was used as a matter of law.

Although a question of reasonableness would ordinarily be one for the fact finder, the record

6

clearly indicates that the force employed by the Defendants Doyle and Guaney in effectuating this seizure was reasonable, not excessive, as a matter of law.  Courts have noted that "routine handcuffing 'at the time of arrest, absent something more, cannot constitute a cognizable excessive force claim.'"  Gil v. County of Suffolk, 590 F. Supp. 2d 360, 371 (E.D.N.Y. 2008) (quoting Stokes v. City of New York, No 05-CV-0007, 2007 U.S. Dist. LEXIS 32787, at *11 (E.D.N.Y. May 3, 2007).  Courts have found, however, that handcuffing can give rise to an excessive force claim pursuant to 42 U.S.C. § 1983 where a plaintiff suffers an injury as a result.  See, e.g., Gonzalez v. City of New York, No. 98-CV-3084 (ILG), 2000 U.S. Dist. LEXIS 5230, at *4 (E.D.N.Y. Mar. 7, 2000) (denying summary judgment where plaintiff presented expert testimony that he suffered permanent injury from handcuffs and had requested that handcuffs be loosened); see also Esmont v. City of New York , 371 F. Supp. 2d 202, 214-15 (E.D.N.Y. Mar. 14, 2005) (noting that "[p]lacing handcuffs on an arrestee tight enough to cause nerve damage may, however, constitute excessive force in violation of the Fourth Amendment").

Where there has been no injury or only minor injuries, courts have granted summary judgment dismissing claims of excessive force.  See, e.g., Esmont, 371 F. Supp. 2d at 215 (summary judgment granted because plaintiff failed to present evidence that she requested that her handcuffs be loosened, there was therefore no evidence that any defendant unreasonably ignored her complaints of pain, and the plaintiff's claim of "diminished use of her left wrist" was unsubstantiated by medical evidence); Drummond v. Castro, 522 F. Supp. 2d 667, 679 (S.D.N.Y. 2007) (court granted summary judgment on excessive force claim, noting that "Plaintiff fails to present any evidence apart from the tight handcuffs that would lead a reasonable juror to find that the police used excessive force" and that plaintiff did not suffer an injury from the handcuffs);

Hamlett v. Town of Greenburgh, No. 05-CV-3215 (MDF), 2007 U.S. Dist. LEXIS 3201, at *3 (S.D.N.Y. Jan. 16, 2007) (finding "brief numbness" resulting from handcuffs insufficient to constitute excessive force as a matter of law); Wilder v. Village of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) (granting summary judgment to defendants where handcuffing resulted in inflammation of plaintiff's wrists for twenty-four hours but plaintiff did not require medical attention).

Here, summary judgment is appropriate. The record clearly indicates that Plaintiff was not injured as a result of the handcuffing and based on the totality of the circumstances the force employed was reasonable as a matter of law. Plaintiff was injured prior to the time that he was taken into custody. Doyle Decl. ¶ 8; Guaney Decl. ¶7; Munkwitz Decl., Ex. C ¶ 8. Plaintiff never made any complaints to the police officers, EMTs or at Samaritan Hospital that he was in pain nor did he ever request that the handcuffs be loosened. Doyle Decl. ¶¶ 9, 12, 13; Guaney Decl. ¶¶ 9, 11; Kaneg Decl. ¶¶ 7, 9; Ambrosio Decl, Ex. A. Further, the record is devoid of any evidence that Plaintiff ever sought medical assistance for injuries allegedly received on December 2, 2003. Doyle Decl. ¶¶ 12, 13; Guaney Decl. ¶ 11; Kaneg Decl. ¶¶ 7, 9; Ambrosio Decl, Ex. A; Munkwitz Decl., Ex. C. In fact, Plaintiff was again treated for an injury to his left hand on December 9, 2003, which Plaintiff attributed to an alleged assault on December 8, 2003, and at that time he made no mention of any injury resulting from the incident that forms the basis for this claim. Munkwitz Decl., Ex. C.

In addition to there not being any evidence of injury, there is no indication that the force employed was not reasonable given the circumstances. Here, Plaintiff made a call to 911 wherein he made significant threats to "shoot" and "wipe out" a police officer. Burdick Dep. 59-60; Munkwitz Decl., Ex. B at 3. Although he was not ultimately armed, Plaintiff appeared to be

8

intoxicated and behaving erratically. Id. Plaintiff refused to voluntarily go to Samaritan Hospital for evaluation. Doyle Decl.¶ 8; Guaney Decl. ¶¶ 6, 7. Consequently, Defendants were required to remove Plaintiff from his seated position in order to bring him to the hospital for evaluation. Id. It is clear from the record that Plaintiff posed a threat to others and was actively refusing Defendants' request to voluntarily submit to evaluation. The force employed by Defendants in effectuating this seizure was objectively reasonable. Accordingly, Defendants are entitled to judgment as a matter of law on this claim.

### C. False Arrest

Plaintiff brings a claim for false arrest pursuant to § 1983. Compl. ¶¶ 20-25. Defendants move for summary judgment on the grounds that there was probable cause sufficient to justify the seizure pursuant to MHL § 9.41 and, therefore, the confinement was privileged and, accordingly, this claim fails as a matter of law.

The elements of a cause of action for false arrest brought pursuant to the Fourth Amendment are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Weyent v. Okst, 101 F.3d 845, 853 (2d Cir. 1996); Bayne v. Provost, 1:04-CV-44, 2005 U.S. Dist. LEXIS 40889, at *14-15 (N.D.N.Y. Aug. 4, 2005). If Plaintiff's confinement was legally justified under the authority of the MHL § 9.41[3], then his confinement was

---

[3] New York Mental Hygiene Law § 9.41 provides that:

Any peace officer, when acting pursuant to his or her special duties, or police officer who is a member of the state police or of an authorized police department or force or of a sheriff's department may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others. Such officer may direct the removal of such person or remove

privileged and his false arrest claim under § 1983 fails as a matter of law.  See Kerman, 261 F.3d at 240 n. 8; see also Bayne, 2005 U.S. Dist. LEXIS 40889, at *17.

"The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others." Hoffman v. County of Delaware, 41 F. Supp. 2d 195, 209 (N.D.N.Y. 1999) (internal citation and quotation marks omitted); see also Glass v. Mayas, 984 F.2d 55, 58 (2d Cir. 1993).  "[A] showing of probable cause in the mental health seizure context requires only a 'probability or substantial' chance of dangerous behavior, not an actual showing of such behavior."  Hoffman, 41 F. Supp. 2d at 209 (internal citation and quotation marks omitted).  "[T]he existence of probable cause to arrest an individual is a complete defense" to a claim for "false arrest."  Bayne, 2005 U.S. Dist. LEXIS 40889, at *18; Weyant, 101 F.3d at 852.  Accordingly, "the critical question in this case is whether the [Defendants] possessed probable cause to conclude that Plaintiff was acting in a manner that would justify a MHL § 9.41 seizure."  Bayne, 2005 U.S. Dist. LEXIS 40889, at *19; see also Sanchez v. Town of Greece, 98-CV-6433, 2004 U.S. Dist. LEXIS 29357, at *4 (W.D.N.Y. Sept. 1, 2004) ("Here, the defendant officers had sufficient probable cause to believe that Sanchez might be mentally ill and that he would be arrested pursuant to New York's Mental Hygiene Law [§ 9.41].").

In the mental health context, the relevant probable cause inquiry "is whether the facts and

---

him or her to any hospital specified in subdivision (a) of section 9.39 or any comprehensive psychiatric emergency program specified in subdivision (a) of section 9.40, or, pending his or her examination or admission of any such hospital or program, temporarily detain any such person in another safe and comfortable place, in which event, such officer shall immediately notify the director of community services or, if there be none, the health officer of the city or county of such action.

MHL § 9.41.

circumstances known to the Troopers at the time they determined to take Plaintiff into custody were sufficient to warrant a person of reasonable caution in the belief that Plaintiff might be 'mentally ill and []conducting himself in a manner [] likely to result in serious harm to" himself as those terms are defined by the MHL." Bayne, 2005 U.S. Dist. LEXIS 40889, at *24 (quoting Monday v. Oullette, 118 F.2d 1099, 1102 (6th Cir. 1997) (internal citations omitted)); see Vallen v. Connelly, 99 Civ. 9947 (SAS), 2004 U.S. Dist. LEXIS 4490, at *9 (S.D.N.Y. Mar. 17, 2004) ("Where there is a totality of circumstances pointing to a 'probability or substantial chance of dangerous behavior, not [even] an actual showing of such behavior,' courts have not hesitated in upholding emergency pick up orders") (citing Hoffman, 41 F. Supp. 2d at 209). Whether a person seized pursuant to the MHL is later found to be mentally competent and released is irrelevant to the probable cause analysis. See Bayne, 2005 U.S. Dist. LEXIS 40889, at *24-25; see also Sanchez, 2004 U.S. Dist. LEXIS 29357, at *4 ("A mental hygiene arrest can be based on probable cause even though it is later determined that the arrested person does not suffer from a dangerous mental condition.").

Here, it is clear that the Defendants had probable cause to seize the Plaintiff pursuant to MHL § 9.41. When Plaintiff called 911, he was extremely upset, ranting and raving, and threatening to "shoot" and "wipe out" a police officer. Burdick Dep. at 59-60; Munkwitz Decl., Ex. B at 1-3, 6. Defendants were informed of this erratic behavior and dispatched, along with an ambulance, to Plaintiff's residence to respond to the call. Doyle Decl. ¶ 2. Although the Defendants confirmed that Plaintiff was not armed, Plaintiff did appear to be highly intoxicated. Doyle Decl. ¶¶ 4-5, 8; Guaney Decl. ¶¶ 3-4, 6; Kaneg Decl. ¶¶ 3-4. Plaintiff's "erratic and bizarre behavior" in addition to his threats to "shoot" and "wipe out" a police officer were sufficient to provide the Defendants with probable cause to believe that Plaintiff was mentally ill and that there

was a substantial chance of dangerous behavior. Sanchez, 2004 U.S. Dist. LEXIS 29357, at *10-11; Vallen, 2004 U.S. Dist. LEXIS 4490, at *9. The fact that Plaintiff was subsequently released by Samaritan Hospital is irrelevant. See Vallen, 2004 U.S. Dist. LEXIS 4490, at *8; see also Bayne, 2005 U.S. Dist. LEXIS 40889, at *24-25. Accordingly, given that there was probable cause, this seizure was privileged pursuant to the New York Mental Hygiene Laws and, therefore, Plaintiff's false arrest claim fails as a matter of law.

### D.      Qualified Immunity

In the alternative, Defendants' Motion for summary judgment is granted and the claims against the Defendants are dismissed on the basis of qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "provides ample support to all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 494-95 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

A claim of entitlement to qualified immunity is subject to a three-step analysis. Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003). As a threshold matter, it must first be determined whether, based upon the facts alleged, plaintiff has facially established a constitutional violation. Id.; Gilles v. Repicky, 511 F.3d 239, 243-44 (2d Cir. 2007). If the answer to this inquiry is in the affirmative, the court must then turn its focus to whether the right in issue was clearly established at the time of the alleged violation. Id. (citing Saucier v. Katz, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001)); see also Poe v. Leonard, 282 F.3d 123, 132-33 (2d Cir.

2002).  Finally, if the plaintiff had a clearly established, constitutionally protected right that was violated, he or she must demonstrate that it was not objectively reasonable for the defendant to believe that his action did not violate such law.  Harhay, 323 F.3d at 211; Poe, 282 F.3d at 133 (quoting Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998) (internal citation omitted)).

In this case, the Court has already determined that Plaintiff has failed to establish a constitutional violation under the Fourth Amendment because Plaintiff's arrest was privileged and the Defendants used reasonable, not excessive, force.  Accordingly, the Court finds that Defendants are entitled to qualified immunity because the seizure was privileged pursuant to the New York Mental Hygiene Laws and the force employed to effectuate this seizure was reasonable.

### III.    CONCLUSION

Accordingly, it is hereby

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 35) is **GRANTED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:     June 17, 2009
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge